IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Dorothy Smith, ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | C.A. No. 2:05-1155-PMD |
| John Ozmint, Commissioner of the South ) | **ORDER** |
| Carolina Department of Corrections, ) | |
| Sheriff A. Lane Cribb, as Custodian of the ) | |
| Georgetown County Sheriff's Department, ) | |
| Robert Stewart, Chief, South Carolina Law ) | |
| Enforcement Division, Georgetown County ) | |
| Solicitor's Office, John Gregory Hembree, ) | |
| Individually and in his Official Capacity, ) | |
| Zacharias Grate, Individually and in his ) | |
| Official Capacity, Robert Medlin, ) | |
| Individually and in his Official Capacity, ) | |
| Carter Weaver, Individually and in his ) | |
| Official Capacity, John Bartell, Individually ) | |
| and in his Official Capacity, ) | |
|    Defendants. ) | |
|                ) | |

This matter is before the court upon Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In order to grant this motion, the court must take the allegations in the complaint as true and conclude that Plaintiff, as the non-moving party, can prove no set of facts in support of her claim that would entitle her to relief. *Burbach Broadcasting Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Bruce v. Riddle*, 631 F.2d 272, 273-74 (4th Cir. 1980). If matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R. Civ. P. Rule 12(b). For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Dorothy Smith is a sixty-nine year-old mildly mentally retarded African American woman. On December 31, 1996, Plaintiff was arrested for aiding and abetting in the armed robbery and murder of Ms. Lena Mae Grier. Plaintiff's husband at the time, Mr. Marion Smith, was arrested for the armed robbery and murder. After her arrest, Plaintiff, who was elderly and in bad health, alleges that she was bullied and intimidated by investigators into making an inculpatory statement.

After her arrest, Plaintiff remained in the Georgetown County Detention Center until June 26, 1997, approximately six months, because she was unable to post bond. Marion Smith was tried for murder and armed robbery in 1997. Mr. Smith was acquitted on all charges in 1997 and was not retried.

On December 13, 1999, Plaintiff and Mr. Smith brought an action against Sheriff Lane Cribb and the officers who had arrested them and investigated the case in 1996-97, alleging civil rights violations in conjunction with their arrest and detention. This action was voluntarily dismissed by Plaintiff with prejudice on April 27, 2000.

On January 24, 2000, three years after Mr. Smith was acquitted, Plaintiff was tried for accessory after the fact and misprison of felony. The state presented evidence that Plaintiff knowingly and with criminal neglect failed to bring Marion Smith to justice after he had committed the felonious crimes of murder and robbery. The court held that all statements made by Plaintiff during the investigation were voluntary and admissible, with the exception of a statement by Plaintiff at a preliminary hearing. At the conclusion of the state's case, the court granted the Defendant's motion for directed verdict on the state's charge of accessory after the fact. On February 2, 2000, the jury returned a verdict of guilty on the charge of misprison of felony. At the time of sentencing, Plaintiff was sixty-three years old, disabled and undergoing chemotherapy for

breast cancer. The court sentenced her to eight years, with credit for approximately six months for time served.

Plaintiff appealed her conviction to the South Carolina Court of Appeals. Plaintiff asserted that she had not been informed of her rights. The Court of Appeals affirmed her conviction. *State v. Smith,* 348 S.C. 601, 560 S.E.2d 430 (S.C. Ct. App. 2002). The South Carolina Supreme Court, however, held that Plaintiff was entitled to a directed verdict on the misprison charge because her concealment of inculpating information was protected by her constitutional right against self-incrimination. The Supreme Court held that the investigating officers had violated this constitutional right. By order filed January 20, 2004, the Supreme Court reversed Plaintiff's conviction. *State v. Smith*, 357 S.C. 182, 592 S.E.2d 302 (2004).

Plaintiff was at the South Carolina Department of Corrections ("SCDC") for three years and eight months, from February 2, 2000 until October 24, 2003. While in the state's custody, Plaintiff alleges that SCDC continuously failed to give Plaintiff proper medical attention and treatment for her breast cancer. Nonetheless, sometime in 2001, Plaintiff's cancer went into remission. Plaintiff also suffered numerous injuries and illness while in SCDC for which Plaintiff alleges she received insufficient care. On one occasion, Plaintiff was pushed by an inmate and fell. She claims that she was initially denied medical treatment and then was erroneously determined to have no injury. Because she was having trouble standing, SCDC provided Plaintiff with a wheelchair. After several complaints of pain, Plaintiff was later found to have a broken pelvic bone. Plaintiff alleges that she suffered from several other ailments and injuries for which SCDC failed to provide adequate medical attention including: (1) another untreated fall; (2) deteriorating mental health; and (3) persistent ear infections and bladder outlet obstruction. Plaintiff also cites an instance in which SCDC failed to provide medications prescribed by her treating physician.

Plaintiff asserts the following causes of action: (1) §1983 claim for malicious prosecution as against the investigators and officers in this case; (2) §1983 claim for false imprisonment for the six months in detention in 1997 and the three years and eight months from 2000-03; (3) tort claim against Sheriff Cribb for negligently supervising officers during investigation and prosecution; (4) libel as to investigators for statements published in the Georgetown County newspaper in 2004; (5) libel as to Solicitor Greg Hembree for statements made to the Sun News in 2004; (6) negligence claim against SCDC; (7) negligent supervision claim against SCDC; (8) intentional infliction of emotional distress against all Defendants; and (9) § 1988 claim for expert and attorney's fees.

## **ANALYSIS**

Considering only the allegations in the complaint, the court first addresses *sua sponte* whether it has jurisdiction to hear the claims asserted. Federal courts, on their own, may raise questions of subject matter jurisdiction. If there is no jurisdiction, there is no authority to sit in judgment of anything else. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778-79 (U.S. 2000). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Ex parte McCardle,* 74 U.S. 506 (1868)).

In *Quern v. Jordan*, 440 U.S. 332 (1979), the Supreme Court held that the Eleventh Amendment bars § 1983[1] suits against state governments in federal court. The Supreme Court is very concerned about federal court relief against state officers that has the effect of forcing state

---

[1] 42 U.S.C. § 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

governments to pay money damages.  Thus, the Court has held that, even where an individual officer is the named defendant, the Eleventh Amendment prevents an award of monetary relief from the state treasury.  In *Ford Motor Co. v. Dept. of the Treasury*, 323 U.S. 459, 464 (1945), the Court said, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke sovereign immunity from suit even though individual officials are nominal defendants."

In this case, Plaintiff asserts § 1983 claims against several officials of the State of South Carolina, both "Individually and in their Official Capacity."  As discussed above, the Eleventh Amendment prevents the court from considering claims asserted against the named individuals in their official capacity; however, the Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the officers' own pockets.  *See e.g.,* Kentucky v. Graham, 473 U.S. 159 (1985).  As such, the court does have subject matter jurisdiction to hear Plaintiff's § 1983 and § 1988 claims as against state employees in their individual capacities. Federal court jurisdiction to hear these suits exists under the general federal question jurisdiction statute, 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1343(3), which grants jurisdiction for suits redressing violations of the federal laws which provide for equal rights of citizens.  Accordingly, the court dismisses the § 1983 and § 1988 claims to the extent they are asserted against the State of South Carolina or against state employees in their official capacity.

Plaintiff also asserts several state law tort claims against employees of South Carolina, ostensibly under pendant jurisdiction.  *See Siler v. Louisville & Nashville R.R.*, 213 U.S. 175 (1909) (holding that where a state law claim arises from the same set of facts as the federal law claim, the federal court may exercise pendant jurisdiction over the state law matter).  The court now considers whether it has jurisdiction to hear these pendant state law claims against state employees.

Under the Eleventh Amendment, a federal court has jurisdiction to hear a claim against a state, a state's agencies, and state employees acting within their official capacity, only to the extent that either the state has expressly waived immunity or Congress has successfully abrogated that immunity. *Hans v. Louisiana*, 134 U.S. 1 (1890) (holding that the Eleventh Amendment bars suits against a state by its own citizens); *see Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (asserting that an agency of state government is a part of the state for purposes of the Eleventh Amendment). South Carolina, through the South Carolina Tort Claims Act ("the Act"), mandates that the "State, an agency, a political subdivision, and a government entity are all liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages." S.C. Code § 15-78-40. Suits brought under the South Carolina Tort Claims Act must be brought *in a state court* within the boundaries of South Carolina. *See* S.C. Code § 15- 78-20(e) (providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State); *Meyer v. Miro*, 2003 WL 23198856, at *12 (D.S.C. Feb 12, 2003). Suit under the Act is the *exclusive remedy* for a tort committed by an employee of the state of South Carolina. S.C. Code § 15-78-70(a); *Patterson v. City of Columbia,* 2003 WL 23901761 (D.S.C. Dec. 29, 2003).

First, the court considers whether the Eleventh Amendment bars Plaintiff's tort claims against the SCDC and the state employees in their official capacity. The court notes that all tort claims Plaintiff asserts against individual defendants are for acts or omissions alleged to have occurred in the scope of their employment with the State of South Carolina. The Act, which is the exclusive remedy for any tort committed by a government employee acting within the scope of his

official duties, waived immunity in state court for certain tort claims against the state and state employees; however, the Act expressly reserved the state's Eleventh Amendment immunity in federal court. *McCall v. Williams*, 52 F.Supp.2d 611, 615 (D.S.C. 1999). As such, the Eleventh Amendment bars all of Plaintiff's pendent state law tort claims against the SCDC, a state agency, as well as against Commissioner Ozmint, Sheriff Cribb, Chief Stewart, Officer Grate, Officer Medlin, Officer Weaver, Officer Bartell, and Solicitor Hembree in their official capacities as employees of the state. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984) ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."); *see also McFadden v. Clarendon County Sheriff's Dept*., 2001 WL 34085610 (D.S.C. May 21, 2001); *Huang v. Bd. of Governors,* 902 F.2d 1134, 1138 (4th Cir. 1990); *McCall v. Williams*, 52 F.Supp.2d 611, 615 (D.S.C. 1999).

Second, the court considers whether Plaintiff is barred from asserting her pendant state law claims against state employees in their *individual* capacities. While the Act is the exclusive remedy for injury caused by state employees in the scope of official duty, it does not grant an employee personal "immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted *actual fraud*, *actual malice*, *intent to harm*, or a crime involving *moral turpitude*." S.C. Code § 15- 78-70(b); *see also* S.C. Code § 15-78-60(17) (emphasis added). Thus, a state employee can, in these limited circumstances, be held personally liable by a federal court for some intentional torts committed within the scope of his employment. *See Roberts v. City of Forest Acres,* 902 F.Supp. 662, 671 (D.S.C. 1995) (finding that the governmental entity is not liable under the Act, and the employee is personally liable, when the employee's conduct falls within the exceptions listed in section 15-78-70(b)). In this case, Plaintiff's negligence and common law libel claims fail to allege intent to harm or actual malice.

As such, for these claims, the sole remedy is under the Act and Plaintiff may not assert these claims in federal court against any state employee in his individual capacity. *See McCall v. Williams*, 52 F.Supp.2d 611 (D.S.C. 1999). Plaintiff's intentional infliction of emotional distress claim, however, does allege and require a showing of actual malice and intent to harm. As such, the court does have pendant jurisdiction to hear Plaintiff's intentional infliction of emotional distress claim as against Defendants in their individual capacities.

After considering the allegations of the complaint in the light most favorable to Plaintiff, this court finds that it has no jurisdiction to consider either tort claims asserted against a state or negligence and libel claims asserted against state employees acting within the scope of their employment. Accordingly, the court dismisses the following causes of action: (3) negligent supervision as to Sheriff Cribb, individually and in his official capacity; (4) libel as to the investigators, individually and in their official capacities;[2] (5) libel as to defendant Greg Hembree, individually and in his official capacity;[3] (6) negligence as to defendant SCDC; (7) negligent supervision as to defendant SCDC; and (8) intentional infliction of emotional distress as against Defendants in their official capacities.

The court now considers the argument in Defendants' Motion to Dismiss pertaining to the claims over which the court does have jurisdiction: the § 1983 claims for malicious prosecution and false imprisonment as against Defendants in their individual capacities, the claim of intentional infliction of emotional distress as against Defendants in their individual capacities, and the § 1988

---

[2] The investigators' allegedly defamatory statement that Plaintiff "had given a statement that she heard her a 'pow' while her husband was in the store" was made within the scope of their employment.

[3] Mr. Hembree's statement that "he was glad that someone was being held accountable for the killing of Lena Mae Grier" was made in the scope of his position as Solicitor.

claim for attorney's fees as against Defendants in their individual capacities.

**Res Judicata**

Defendants assert that Plaintiff brought the same claims as brought in the current case in the lawsuit previously filed in 1999 as C/A No.: 2:99-4086-18 (hereinafter "1999 complaint" or "1999 case"). Plaintiff's 1999 complaint asserted § 1983 causes of action for illegal arrest, unreasonable force, and malicious prosecution, as well as several claims for battery. These claims were all based on alleged violations occurring during the Plaintiff's 1996-97 arrest and detention. The defendants named in the 1999 complaint were the officers who arrested Plaintiff in 1996.[4] After only minimal discovery, Plaintiff consented to a voluntary dismissal of her case with prejudice on April 27, 2000. The Order of Dismissal, signed by the Honorable David C. Norton, stated: "Plaintiff, Dorothy Smith, warrants by her signature below, that she understands that the dismissal of this action waives any and all rights she might have to file any future civil action regarding this matter in the future." Defendants assert that this Order and principles of *res judicata* bar Plaintiff from bringing the current action.

Upon reviewing Plaintiff's 1999 complaint, the court cannot agree that the principles of *res judicata* bar her from bringing the present action. The general rule of *res judicata* is that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351,

---

[4] The 1999 complaint names as defendants: Sheriff Lane Cribb, Deputy Weaver, Michael Lewis, Officer Knox, "Three Unknown Georgetown Deputies or SLED Agents, and Any Other John or Jane Doe Not Now Ascertained, But Revealed as Potentially Liable Subsequent to the Filing of This Complaint."

352 (1876). The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *Wright & Miller,* 18 Fed. Prac. & Proc. Juris.2d § 4406. The current complaint cites civil rights violations alleged to have occurred during Plaintiff's trial and conviction (January 24, 2000) and subsequent time in prison (from 2000-2004), all of which followed the 1999 complaint's dismissal.[5] As such, because the current action asserts claims that could not have been raised in the 1999 complaint, *res judicata* and the 2000 Order are not a bar to Plaintiff's current claims.

---

[5] The court realizes that the Plaintiff's malicious prosecution claim and false imprisonment claims are based, in part, on Plaintiff's arrest and detention prior to trial in 1997. This period of detention was one of the subjects of the 1999 complaint. Because these claims were not ripe for adjudication prior to the 2004 reversal of conviction, the court finds that the 2000 Order does not prevent Plaintiff from bringing suit regarding this period of detention. *See Heck v. Humphrey*, 418 U.S. 539 (1974) (holding that in order to recover for an allegedly unconstitutional conviction or imprisonment, a plaintiff must first have the conviction or sentence reversed on appeal).

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's causes of action **NUMBER ONE** (§ 1983 Malicious Prosecution against Defendants in their Official Capacity); **NUMBER TWO** (§ 1983 False Imprisonment against Defendants in their Official Capacity); **NUMBER THREE** (Negligent Supervision of Sheriff Cribb), **NUMBER FOUR** (Libel as to Investigators); **NUMBER FIVE** (Libel as to Solicitor Hembree); **NUMBER SIX** (Negligence as to SCDC); **NUMBER SEVEN** (Negligent Supervision Claim as to SCDC); **NUMBER EIGHT** (Intentional Infliction of Emotional Distress against Defendants in their Official Capacities); and **NUMBER NINE** (§ 1988 Attorney's Fees against Defendants in their Official Capacity).

It is further order that Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's causes of action **NUMBER ONE** (§ 1983 Malicious Prosecution as against Defendants in their Individual Capacity); **NUMBER TWO** (§ 1983 False Imprisonment against Defendants in their Individual Capacities); **NUMBER EIGHT** (Intentional Infliction of Emotional Distress against Defendants in their Individual Capacities); and **NUMBER NINE** (§ 1988 Attorney's Fees against Defendants in their Individual Capacities).

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, SC**
**October 24, 2005**